UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

**NOT FOR PUBLICATION**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | No. 08-01789 (CGM) |
| Plaintiff-Applicant, | SIPA LIQUIDATION |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Chapter 7 Estate of Bernard L. Madoff, | Adv. Pro. No. 12-01698 (CGM) |
| Plaintiff, | |
| v. | |
| BANQUE INTERNATIONALE À LUXEMBOURG S.A. (*f/k/a* Dexia Banque Internationale à Luxembourg S.A.); RBC INVESTOR SERVICES BANK S.A. (*f/k/a* RBC Dexia Investor Services Bank S.A.); RBC INVESTOR SERVICES TRUST (*f/k/a* RBC Dexia Investor Services Trust); BANCO INVERSIS, S.A., as successor-in-interest to RBC Dexia Investor Services España S.A.; and BANQUE INTERNATIONALE À LUXEMBOURG (SUISSE) S.A. (*f/k/a* Dexia Private Bank (Switzerland) Ltd.), | |
| Defendants. | |

**MEMORANDUM DECISION DENYING DEFENDANTS'
MOTION TO DISMISS**

<u>**A P P E A R A N C E S**</u>:

*DRAFT*

*Special Counsel for Irving H. Picard, Trustee for the Substantively Consolidated SIPA
Liquidation of Bernard L. Madoff Investment Securities LLC and the Chapter 7 Estate of
Bernard L. Madoff*
WINDELS MARX LANE & MITTENDORF, LLP
156 West 56th Street
New York, NY 10019
By:     Howard L. Simon
        Kim M. Longo
        Alan D. Lawn

*Attorneys for RBC Investor Services S.A., RBC Investor Services Trust, and Banco Inversis, S.A.*
KATTEN MUCHIN ROSENMAN LLP
50 Rockefeller Plaza
New York, New York 10020
By:     Anthony L. Paccione
        Mark T. Ciani

**CECELIA G. MORRIS**
**UNITED STATES BANKRUPTCY JUDGE**

Pending before the Court is Defendants', RBC Investor Services Bank S.A. ("RBC

Bank"), RBC Investor Services Trust ("RBC Trust"), and Banco Inversis S.A. ("Banco

Inversis") (as successor-in-interest to RBC Dexia Investor Services España S.A.) (collectively,

"RBC" or "RBC Defendants"), motion to dismiss the complaint of Irving Picard, the trustee

("Trustee") for the liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS")

seeking to recover subsequent transfers allegedly consisting of BLMIS customer property.  RBC

Defendants seek dismissal for lack of personal jurisdiction and improper adoption by reference.

For the reasons set forth herein, the motion to dismiss is denied in its entirety.

## **Jurisdiction**

This is an adversary proceeding commenced in this Court, in which the main underlying

SIPA proceeding, Adv. Pro. No. 08-01789 (CGM) (the "SIPA Proceeding"), is pending.  The

SIPA Proceeding was originally brought in the United States District Court for the Southern

District of New York (the "District Court") as *Securities Exchange Commission v. Bernard L.*

*DRAFT*

*Madoff Investment Securities LLC et al.*, No. 08-CV-10791, and has been referred to this Court.

This Court has jurisdiction over this adversary proceeding under 28 U.S.C. § 1334(b) and (e)(1),

and 15 U.S.C. § 78eee(b)(2)(A) and (b)(4).

This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (F), (H) and (O).  This Court

has subject matter jurisdiction over these adversary proceedings pursuant to 28 U.S.C. §§

1334(b) and 157(a), the District Court's Standing Order of Reference, dated July 10, 1984, and

the Amended Standing Order of Reference, dated January 31, 2012.  In addition, the District

Court removed the SIPA liquidation to this Court pursuant to SIPA § 78eee(b)(4), (*see* Order,

Civ. 08– 01789 (Bankr. S.D.N.Y. Dec. 15, 2008) ("Main Case"), at ¶ IX (ECF No. 1)), and this

Court has jurisdiction under the latter provision.  Personal jurisdiction has been contested by the

RBC Defendants and will be discussed *infra*.

### Background

The Court assumes familiarity with the background of the BLMIS Ponzi scheme and its

SIPA proceeding.  *See Picard v. Citibank, N.A.* (*In re BLMIS*), 12 F.4th 171, 178–83 (2d Cir.

2021), *cert. denied sub nom. Citibank, N.A. v. Picard*, 142 S. Ct. 1209, 212 L. Ed. 2d 217 (2022).

This adversary proceeding was filed on June 6, 2012.  (Compl., ECF[1] No. 1).  The

Trustee filed an amended complaint ("Amended Complaint"), on June 30, 2022.  (Am. Compl.,

ECF No. 134).  Via the amended complaint, the Trustee seeks to recover $65,995,850 in

subsequent transfers made to RBC Defendants and associated defendants Banque Internationale

à Luxembourg S.A. (*f/k/a* Dexia Banque Internationale à Luxembourg S.A.) ("Dexia Banque")

and Banque International à Luxembourg (Suisse) S.A. (*f/k/a* Dexia Private Bank (Switzerland)

Ltd.) ("Dexia Suisse," collectively "Dexia Defendants"), through Fairfield Sentry Limited

---

[1] Unless otherwise indicated, all references to "ECF" are references to this Court's electronic docket in adversary proceeding 12-01698-cgm.

*DRAFT*

("Fairfield Sentry"), Fairfield Sigma Limited ("Fairfield Sigma," collectively, the "Fairfield

Funds"), and Rye Select Broad Market Portfolio Limited ("Rye Portfolio Limited").  (*Id.* ¶ 2).  In

the Amended Complaint, the Trustee seeks to recover approximately $54,875,160 received by

Dexia Defendants and approximately $11,120,690 received by RBC Defendants.  (*Id.*).  The

Trustee has provided a table with a breakdown of the funds subsequently transferred to each

Defendant and the Court has added the left-most column for clarity:

|  | Defendant | BLMIS feeder fund(s) | Transfers |
|---|---|---|---|
| Dexia Defendants[2] | Dexia Banque | • Fairfield Sentry<br>• Fairfield Sigma | $52,331,690<br>$537,645 |
| | Dexia Suisse | • Fairfield Sentry<br>• Fairfield Sigma | $2,000,067<br>$5,758 |
| RBC Defendants | RBC Bank | • Fairfield Sentry | $5,146,594 |
| | RBC Trust | • Rye Portfolio Limited | $2,433,046 |
| | Banco Inversis | • Fairfield Sentry<br>• Fairfield Sigma | $2,037,173<br>$1,503,877 |

(*See id.* at 3).

The instant motion to dismiss before the Court concerns only the transfers to the RBC

Defendants.  RBC Bank is a *société anonyme* organized under the laws of Luxembourg and its

principal place of business is in Luxembourg.  (*Id.* ¶ 54).  RBC Trust is a trust company

organized under the laws of Canada and its principal place of business is in Ontario.  (*Id.* ¶ 55).

Banco Inversis is a *sociedad anónima* organized under the laws of Spain and its principal place

---

[2] Dexia Defendants filed a separate motion to dismiss. The Court will address the transfers made to the Dexia Defendants in a separate memorandum decision.

of business is in Madrid.  (*Id.* ¶ 56).  At the time of the transfers, each of the RBC Defendants

were wholly owned subsidiaries of a joint venture between non-party Royal Bank of Canada and

Dexia Banque.  (*Id.* ¶ 53).

Fairfield Sentry and Fairfield Sigma Transfers

Following BLMIS's collapse, the Trustee filed an adversary proceeding against

Fairfield Sentry to avoid and recover fraudulent transfers of customer property in the amounts

of approximately $3 billion.  (*Id.* ¶ 149).  In 2011, the Trustee settled with the Fairfield Funds.

(*Id.* ¶ 150).  As part of their settlement, Fairfield Sentry and Fairfield Sigma consented to

judgments in the amounts of $3.054 billion and $752.3 million, respectively.  (Consent Js., 09-

01239-cgm, ECF Nos. 109–10).  Only $70 million has been repaid to the BLMIS customer

property estate.  (Am. Compl. ¶ 150); (Settlement Agreement, 09-01239-cgm, ECF No. 169).

The Trustee commenced a number of adversary proceedings against Fairfield Sentry's

subsequent transferees, like RBC Defendants, to recover missing customer property.

The subsequent transfers the Trustee seeks to collect from RBC Bank and Banco Inversis

were derived from investments with BLMIS made by the Fairfield Funds between 2007 and

2008.  (*Id.* ¶¶ 149–55; Exs. C, E).  The Trustee alleges that subsequent transfers from Fairfield

Sentry to all RBC and Dexia Defendants total at least $61,515,524, and subsequent transfers

from Fairfield Sigma to all RBC and Dexia Defendants total at least $2,047,280.  (*Id.* ¶¶ 156,

161).  The Trustee seeks approximately $8,687,644 of those transfers from RBC Bank and

Banco Inversis (the "Fairfield RBC Transferees").  (*See id.* ¶ 2).

Rye Portfolio Limited Transfers

Following BLMIS's collapse, the Trustee filed an adversary proceeding against

Tremont Group Holdings ("Tremont") and dozens of its affiliates to avoid and recover

*DRAFT*

fraudulent transfers of customer property in the amount of approximately $2.1 billion.  (*Id.* ¶ 76).  Rye Portfolio Limited was a named defendant alongside its manager, Tremont.  (*See* Tremont Compl., *Picard v. Tremont Grp. Holdings, Inc.*, Adv. Pro. 10-05310, ECF No. 1, (the "Tremont Complaint")).  Tremont owned, managed, and operated Rye Portfolio Limited, along with other "Rye Select" feeder funds.[3]  (*Id.*).  The Rye Select feeder funds had no employees of their own and acted through Tremont Group officers who operated the Rye Select funds. (Am. Compl. ¶ 70).

In 2011, the Trustee settled with Tremont and its affiliates, including Rye Portfolio Limited.  (*Id.* ¶ 78).  As part of the settlement, Tremont and Rye Portfolio Limited, consented to a judgment in the amount of $1.025 billion ("Tremont Settlement").  (Order, Adv Pro. 10-05310-brl, ECF No. 38).  The Tremont Settlement provides that the Trustee may seek additional recovery from any non-settling defendant or subsequent transferee.  (*Id.* at 6).  The Trustee commenced a number of adversary proceedings against Tremont subsequent transferees, like RBC Trust, to recover the missing customer property.

The subsequent transfers the Trustee seeks to collect from RBC Trust were derived from investments with BLMIS made by Rye Portfolio Limited through its manager, Tremont.  (Am. Compl. ¶¶ 164–170; Ex. H).  The Trustee alleges that BLMIS made initial transfers to Rye Portfolio Limited of approximately $620 million, including $609 million made within six years of the filing date and $350 million made within two years of the filing date.   (Am. Compl. ¶¶ 166–68).   The Trustee has alleged that, based on his investigations, $2,433,046 transferred from BLMIS to Rye Portfolio Limited was subsequently transferred to RBC Trust.  (*Id.* ¶ 171).

---

[3] The Fairfield and Rye Portfolio Limited Funds are considered "feeder funds" of BLMIS because the intention of the funds was to invest all or substantially all of their assets in BLMIS. (*Id.* ¶ 2).

*DRAFT*

In their motion to dismiss, RBC Defendants seek dismissal for lack of personal

jurisdiction and improper adoption by reference.  The Trustee opposes the motion to dismiss.

For the reasons set forth herein, the motion to dismiss is denied in its entirety.

## Discussion

**Personal Jurisdiction**

RBC Defendants object to the Trustee's assertion of personal jurisdiction.  (Mem. L. 3–

16, ECF No. 138).  In the Amended Complaint, the Trustee argues that RBC Defendants

purposefully availed themselves to the laws of the United States.  (Am. Compl. ¶¶ 61–64, 66–

75).

To survive a motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2)

of the Federal Rules of Civil Procedure, the Trustee "must make a prima facie showing that

jurisdiction exists."  *SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 342 (2d Cir. 2018) (quoting

*Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34–35 (2d Cir. 2010)).  A trial court has

considerable procedural leeway when addressing a pretrial dismissal motion under Rule 12(b)(2).

*Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013).  "'It may

determine the motion on the basis of affidavits alone; or it may permit discovery in aid of the

motion; or it may conduct an evidentiary hearing on the merits of the motion.'"  *Dorchester Fin.*

*Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013) (quoting *Marine Midland Bank,*

*N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981)); *see also Picard v. BNP Paribas S.A.* (*In re*

*BLMIS*), 594 B.R. 167, 187 (Bankr. S.D.N.Y. 2018) (same).

"Prior to discovery, a plaintiff challenged by a jurisdiction testing motion may defeat the

motion by pleading in good faith, legally sufficient allegations of jurisdiction."  *Dorchester Fin.*,

722 F.3d at 84–85 (quoting *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d

*DRAFT*

Cir. 1990)); *Picard v. Fairfield Greenwich Grp.* (*In re Fairfield Sentry Ltd.*), 627 B.R. 546, 565 (Bankr. S.D.N.Y. 2021) (same).  In this case, the Trustee has alleged legally sufficient allegations of jurisdiction simply by stating that RBC Defendants "knowingly directed funds to be invested with, and then redeemed from, New York-based BLMIS via one or more of Fairfield Sentry, Fairfield Sigma, and Rye Portfolio Limited, each of which was managed and operated out of New York."  (Am. Compl. ¶ 66).  This allegation alone is sufficient to establish a prima facie showing of jurisdiction over RBC Defendants in the pre-discovery stage of litigation.  At the pre-discovery stage, the allegations need not be factually supported.  *See Dorchester Fin. Sec. Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 85 (2d Cir. 2013) (explaining that an averment of facts is necessary only after discovery).  That being stated, this was not the only allegation made by the Trustee.

In order to be subjected to personal jurisdiction in the United States, due process requires that a defendant have sufficient minimum contacts with the forum in which defendant is sued "'such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'"  *Picard v. Bureau of Labor Ins.* (*In re BLMIS*), 480 B.R. 501 (Bankr. S.D.N.Y. 2012), 480 B.R. 501, 516 (Bankr. S.D.N.Y. 2012) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).  The pleadings and affidavits are to be construed "'in the light most favorable to the plaintiffs, resolving all doubts in their favor.'"  *Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010) (quoting *Porina v. Marward Shipping Co.*, 521 F.3d 122, 126 (2d Cir. 2008)); *Picard v. BNP Paribas S.A.* (*In re BLMIS*), 594 B.R. 167, 187 (Bankr. S.D.N.Y. 2018).

> The Supreme Court has set out three conditions for the exercise of specific jurisdiction over a nonresident defendant.  First, the defendant must have purposefully availed itself of the privilege of conducting activities within the forum State or have purposefully directed its conduct into the forum State.

*DRAFT*

Second, the plaintiff's claim must arise out of or relate to the defendant's forum conduct. Finally, the exercise of jurisdiction must be reasonable under the circumstances.

*U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*, 916 F.3d 143, 150 (2d Cir. 2019) (cleaned up).

**Purposeful Availment**

"[M]inimum contacts . . . exist where the defendant purposefully availed itself of the privilege of doing business in the forum and could foresee being haled into court there." *Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 82 (2d Cir. 2018). "Although a defendant's contacts with the forum state may be intertwined with its transactions or interactions with the plaintiff or other parties, a defendant's relationship with a third party, standing alone, is an insufficient basis for jurisdiction." *U.S. Bank Nat'l Ass'n v. Bank of Am.*, 916 F.3d 143, 150 (2d Cir. 2019) (cleaned up). "It is insufficient to rely on a defendant's random, fortuitous, or attenuated contacts or on the unilateral activity of a plaintiff with the forum to establish specific jurisdiction." *Id.*

A party "purposefully avail[s] itself of the benefits and protections of New York laws by knowing, intending and contemplating that the substantial majority of funds invested in Fairfield Sentry would be transferred to BLMIS in New York to be invested in the New York securities market." *Picard v. Bureau of Labor Ins.* (*In re BLMIS*), 480 B.R. 501, 517 (Bankr. S.D.N.Y. 2012).

Minimum Contacts Regarding the Fairfield Sentry Transfers to Fairfield RBC Transferees

RBC Defendants argue that the Trustee has not alleged that Fairfield RBC Transferees had sufficient contacts with New York with regard to the Fairfield Sentry and Fairfield Sigma transfers. (Mem. L. 5–15, ECF No. 138). The Amended Complaint suggests otherwise. In the Amended Complaint, the Trustee alleges that Fairfield RBC Transferees "knowingly directed

*DRAFT*

funds to be invested with, and then redeemed from, New York-based BLMIS via . . . Fairfield

Sentry, [and] Fairfield Sigma . . . each of which was managed and operated out of New York."

(Am. Compl. ¶ 66, ECF No. 138).  The Trustee has alleged that Fairfield Sentry invested a large

majority its assets in BLMIS.  (*See* Fairfield Compl. ¶ 89, *Picard v. Fairfield Inv. Fund Ltd.*,

Adv. Pro. No. 09-1239 ECF No. 286 (the "Fairfield Complaint") ("Under Fairfield Sentry's

offering memorandum, the fund's investment manager was required to invest no less than 95%

of the fund's assets through BLMIS.") (adopted by reference at paragraph 153 of this Amended

Complaint).

Additionally, the Trustee has alleged that Fairfield RBC Transferees used New York

bank accounts to transfer money to and from Fairfield Sentry, exclusively used New York bank

accounts to receive redemptions from the Fairfield Funds, and thus "derived significant revenue

from New York and maintained minimum contacts and/or general business contacts with the

United States and New York in connection with the claims alleged herein."  (Am. Compl. ¶¶ 62,

73).

The Trustee alleges that Fairfield RBC Transferees used accounts at Citibank and

JPMorgan Chase Bank in New York to receive redemptions from the Fairfield Funds and that

subscription payments were ultimately deposited into BLMIS's account at JPMorgan Chase

Bank in New York.  (*Id.* ¶¶ 73–74).  Where a defendant chooses to use a United States bank

account to receive funds, exercising personal jurisdiction over the defendant for causes of action

relating to those transfers is constitutional.  *Off. Comm. of Unsecured Creditors of Arcapita v.*

*Bahrain Islamic Bank*, 549 B.R. 56, 71 (S.D.N.Y. 2016); *Bahrain Islamic Bank v. Arcapita Bank*

(*In re Arcapita Bank B.S.C.(C)*), 640 B.R. 604, 618 (S.D.N.Y. 2022) (stating that a bank submits

to personal jurisdiction in the United States when it is "free to accept or reject the proposed

*DRAFT*

terms" and still chooses to use a United States bank account); *see also Eldesouky v. Aziz*, No. 11–CV–6986 (JLC), 2014 WL 7271219, at *6–7 (S.D.N.Y. Dec. 19, 2014) (finding jurisdiction under New York long-arm statute based solely on defendant's use of New York account to receive payment at issue: "receiving Plaintiffs' money at a New York bank account suffices to establish personal jurisdiction over [RBC Defendants]."); *HSH Nordbank AG N.Y. Branch v. Street*, No. 11 CIV. 9405 DLC, 2012 WL 2921875, at *4 (S.D.N.Y. July 18, 2012) ("District courts in this Circuit have upheld personal jurisdiction based upon a defendant's use of a correspondent bank account in New York where the use of that account was held to lay at the very root of the plaintiff's action.") (quoting *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 66 (2d Cir. 2012)); *Dandong v. Pinnacle Performance Ltd.*, 966 F. Supp.2d 374, 382–83 (S.D.N.Y. 2013) (same).

The Trustee has also alleged that each time Fairfield RBC Transferees signed subscription agreements with the Fairfield Funds, Fairfield RBC Transferees affirmed that they read the fund's private placement memoranda.  (*Id.* ¶ 68).  Based on having acknowledged reading the private placement memoranda, the Trustee has alleged that Fairfield RBC Transferees knew they were transacting business in New York in connection with their investments in the Fairfield Funds.  (Am. Compl. ¶ 69). The private placement memoranda alerted Fairfield RBC Transferees that

> Fairfield Sentry invested at least 95% of its assets with New York-based BLMIS, and Fairfield Sigma invested 100% of its assets with Fairfield Sentry; BLMIS performed all investment management duties for these assets; BLMIS was registered with the SEC; BLMIS was the executing broker for the Fairfield Funds' investment, and purportedly operated and executed the [split strike conversion strategy] on the funds' behalf; BLMIS's SSC Strategy purportedly involved the purchase on U.S. equities, U.S. options, and Treasury Bills, and the decisions regarding which U.S. securities to purportedly purchase, and when to make such purchases, were made by BLMIS in New York; Fairfield Sentry's investment documents provided that subscription payments we wired in U.S. dollars to New

*DRAFT*

York; BLMIS was the custodian of the Fairfield Funds' investments with BLMIS; and BLMIS was 'essential to the continued operation of' [Fairfield Sentry and Fairfield Sigma].

(*Id.*).

The Trustee also alleges that by executing the subscription agreements with Fairfield Sentry, Fairfield RBC Transferees submitted to the jurisdiction of New York as the agreement specified that those defendants:

> (i) '[A]greed that any suit, action, or proceeding . . . with respect to this Agreement and the Fund may be brought in New York,' (ii) 'irrevocably submit[ted] to the jurisdiction of the New York courts with respect to any [p]roceeding,' (iii) 'consent[ed] to the service of process out of any New York court,' and (iv) agreed that '[t]his Agreement shall be governed and enforced in accordance with the laws of New York . . . .

(*Id.* at ¶ 63). Though the subscription agreements do not, alone, give this Court jurisdiction over RBC Defendants as discussed *infra* in footnote 5, the agreements show that RBC Defendants were willing to, and knew that they could, face litigation in New York Courts.

The Trustee has alleged that Banco Inversis filed two customer claims in this SIPA liquidation proceeding in connection with investments made in BLMIS feeder funds. (*Id.* ¶ 64). As this Court has held before, the filing of customer claims seeking to recover alleged losses from investments with BLMIS are contacts that demonstrate purposeful availment to this Court's jurisdiction.[4] *See Picard v. Banque SYZ & Co. (In re BLMIS)*, 2022 WL 2135019, at *4 (Bankr. S.D.N.Y. June 14, 2022); *Picard v. Korea Exch. Bank (In re BLMIS)*, 2022 WL 4371908, at *4 (Bankr. S.D.N.Y. Sept. 21, 2022).

---

[4] Even though courts in this district have held that the filing of customer claims in a SIPA proceeding does not, alone, subject a defendant to personal jurisdiction outside of the claims allowance process, it nevertheless demonstrates a contact with New York. Here, it also furthers the Trustee's assertion the RBC Trust knew they were investing with BLMIS in New York when they invested in Fairfield Sentry. *Picard v. Estate of Igoin*, 525 B.R. 871, 888 (Bankr. S.D.N.Y. 2015); *cf. Germain v. Conn. Nat'l Bank*, 988 F.2d 1323 (2d Cir. 1993) (holding that the filing of a proof of claim only constitutes a waiver of personal jurisdiction for actions brought in the claims allowance process).

*DRAFT*

The Amended Complaint contains allegations that are legally sufficient to constitute a prima facie showing of jurisdiction over Fairfield RBC Transferees. *Dorchester Fin. Sec. Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 85 (2d Cir. 2013). "[A]lthough physical presence in the forum is not a prerequisite to jurisdiction, physical entry into the State—either by the defendant in person or through an agent, goods, mail, or some other means—is certainly a relevant contact." *Walden v. Fiore*, 571 U.S. 277, 285 (2014). Fairfield RBC Transferees "intentionally tossed a seed from abroad to take root and grow as a new tree in the Madoff money orchard in the United States and reap the benefits therefrom." *Picard v. Bureau of Labor Ins.* (*In re BLMIS*), 480 B.R. 501, 506 (Bankr. S.D.N.Y. 2012). Fairfield RBC Transferees alleged contacts with New York are not random, isolated, or fortuitous.

Minimum Contacts Regarding Rye Portfolio Limited Transfers to RBC Trust

As to the Rye Portfolio Limited Transfers, RBC Defendants also argue that the Trustee has not alleged that RBC Trust had sufficient contacts with New York. (Mem. L. 5–15, ECF No. 138). In the Amended Complaint, the Trustee alleges that RBC Trust "knowingly directed funds to be invested with, and then redeemed from, New York-based BLMIS via . . . Rye Portfolio Limited . . . which was managed and operated out of New York." (Am. Compl. ¶ 66, ECF No. 138). The Trustee has alleged that the Rye Portfolio Limited fund existed for the purpose of investing in BLMIS. (*See* Tremont Compl. ¶ 5, *Picard v. Tremont Grp. Holdings, Inc.*, Adv. Pro. 10-05310 ECF No. 1) ("During all times applicable to this action, virtually 100% of the monies invested in [Rye Portfolio Limited] were given to Madoff and deposited with BLMIS") (adopted by reference, at paragraph 76, of this Amended Complaint).

Additionally, the Trustee has alleged that RBC Trust's practice was to "use New York bank accounts to receive redemptions" from Rye Portfolio Limited, and thus "derived significant

*DRAFT*

revenue from New York and maintained minimum contacts and/or general business contacts with the United States and New York in connection with the claims alleged herein." (Am. Compl. ¶¶ 62, 73). The Trustee has also alleged that RBC Trust exclusively used New York bank accounts to receive redemptions, having "seen no evidence of any other accounts designated or used." (Am. Compl. ¶ 73).

The Trustee alleges that RBC Trust used an account in the name of Royal Bank of Canada at Chase Manhattan Bank in New York to receive redemptions and that subscription payments were ultimately deposited into BLMIS's account at JPMorgan Chase Bank in New York. (*Id.* ¶¶ 73–74). Where a defendant chooses to use a United States bank account to receive funds, exercising personal jurisdiction over the defendant for causes of action relating to those transfers is constitutional. *Off. Comm. of Unsecured Creditors of Arcapita v. Bahrain Islamic Bank*, 549 B.R. 56, 71 (S.D.N.Y. 2016); *Bahrain Islamic Bank v. Arcapita Bank (In re Arcapita Bank)*, 640 B.R. 604, 618 (S.D.N.Y. 2022) (stating that a bank submits to personal jurisdiction in the United States when it is "free to accept or reject the proposed terms" and still chooses to use a United States bank account); *see also Eldesouky v. Aziz*, No. 11–CV–6986 (JLC), 2014 WL 7271219, at *6–7 (S.D.N.Y. Dec. 19, 2014) (finding jurisdiction under New York long-arm statute based solely on defendant's use of New York account to receive payment at issue: "receiving Plaintiffs' money at a New York bank account suffices to establish personal jurisdiction over [defendant]."); *HSH Nordbank AG N.Y. Branch v. Street*, No. 11 CIV. 9405 DLC, 2012 WL 2921875, at *4 (S.D.N.Y. July 18, 2012) ("District courts in this Circuit have upheld personal jurisdiction based upon a defendant's use of a correspondent bank account in New York where the use of that account was held to lay at the very root of the plaintiff's action.") (quoting *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 66 (2d Cir.

*DRAFT*

2012)); *Dandong v. Pinnacle Performance Ltd.*, 966 F. Supp.2d 374, 382–83 (S.D.N.Y. 2013)

(same).

The Trustee has also alleged that each time RBC Trust signed subscription agreements

with Rye Portfolio Limited, RBC Trust affirmed that they received and read Rye Portfolio

Limited's prospectus. (Am. Compl. ¶ 71). Based on having acknowledged reading the

prospectus, the Trustee has alleged that RBC Trust knew they were transacting business in New

York in connection with their investment in Rye Portfolio Limited. (*Id.*). The Trustee has

alleged that the Rye prospectus "provided essentially the same information as [Fairfield Sentry's

private placement memoranda], including that Rye Portfolio Limited's assets would be invested

with a manager using the [split strike conversion] strategy" and that custody of the funds would

be held in "a brokerage account with an NASD registered broker dealer." (*Id.* ¶¶ 71–72). The

Trustee has also alleged that Rye Portfolio Limited's due diligence questionnaires alerted

investors that the funds were traded in the U.S. equity market and that cash would be held in U.S.

short term treasury bills. (*Id.*) Based on having read those documents, the Trustee has alleged

that RBC Trust "knew that redemption from [the Rye Portfolio Limited's] account should have

resulted in the investment manager liquidating U.S. securities." (*Id.* ¶ 72).

As to RBC Trust, the Amended Complaint contains allegations that are legally sufficient

to constitute a prima facie showing of jurisdiction. *Dorchester Fin. Sec. Inc. v. Banco BRJ, S.A.*,

722 F.3d 81, 85 (2d Cir. 2013). "[A]lthough physical presence in the forum is not a prerequisite

to jurisdiction, physical entry into the State—either by the defendant in person or through an

agent, goods, mail, or some other means—is certainly a relevant contact." *Walden v. Fiore*, 571

U.S. 277, 285 (2014). RBC Trust "intentionally tossed a seed from abroad to take root and grow

as a new tree in the Madoff money orchard in the United States and reap the benefits therefrom."

*DRAFT*

*Picard v. Bureau of Labor Ins.* (*In re BLMIS*), 480 B.R. 501, 506 (Bankr. S.D.N.Y. 2012). RBC

Trust's alleged contacts with New York are not random, isolated, or fortuitous.

**Arise out of or relate to the defendant's forum conduct**

As to the second prong, the suit must "arise out of *or relate to* the defendant's contacts

with the forum." *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, __ U.S. __, 141 S. Ct. 1017,

1026, 209 L. Ed. 2d 225 (2021) (emphasis in original). "[P]roof that a plaintiff's claim came

about because of the defendant's in-state conduct" is not required. *Id.* at 1027. Instead, the court

need only find "an affiliation between the forum and the underlying controversy." *Goodyear*

*Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011); *Picard v. BNP Paribas S.A.*

(*In re BLMIS*), 594 B.R. 167, 190 (Bankr. S.D.N.Y. 2018) ("Where the defendant's contacts with

the jurisdiction that relate to the cause of action are more substantial, however, it is not

unreasonable to say that the defendant is subject to personal jurisdiction even though the acts

within the state are not the proximate cause of the plaintiff's injury.") (internal quotations

omitted).

Here, the Trustee is asserting subsequent transfer claims against RBC Defendants for

monies they received from Fairfield Sentry, Fairfield Sigma and Rye Portfolio Limited. (Am.

Compl. ¶¶ 156, 161, 171, ECF No. 134). These allegations are directly related to their

investment activities with BLMIS via Fairfield Sentry, Fairfield Sigma, Rye Portfolio Limited.

*Picard v. BNP Paribas S.A.* (*In re BLMIS*), 594 B.R. 167, 191 (Bankr. S.D.N.Y. 2018) (finding

that the redemption and other payments the defendants received as direct investors in a BLMIS

feeder fund arose from the New York contacts such as sending subscription agreements to New

York, wiring funds in U.S. dollars to New York, sending redemption requests to New York, and

receiving redemption payments from a Bank of New York account in New York, and were the proximate cause of the injuries that the Trustee sought to redress).

The suit is affiliated with the alleged in-state conduct. *Goodyear Dunlop Tires Operations v. Brown*, 564 U.S. 915, 919 (2011).

**Reasonableness**

Having found sufficient minimum contacts, the Court must determine if exercising personal jurisdiction over RBC Defendants is reasonable and "comport[s] with fair play and substantial justice." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985) (internal quotations omitted). Factors the Court may consider include the burden on the defendants, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies. *Id.* at 477.

The exercise of jurisdiction is reasonable. The RBC Defendants are not burdened by this litigation. The RBC Defendants actively participated in this Court's litigation for over ten years. They are represented by U.S. counsel and held bank accounts in New York. (Am. Compl. ¶ 73). The Fairfield RBC Transferees submitted to the jurisdiction of New York courts when they signed subscription agreements with the Fairfield Sentry.[5] (Am. Compl. ¶ 63). The forum and the Trustee both have a strong interest in litigating BLMIS adversary proceedings in this Court.

---

[5] Even though this Court held that similarly situated defendants' consent to jurisdiction in New York courts contained in the subscription agreements it signed prior to investing with Fairfield Sentry could not be used as the sole basis for this Court's exercise of personal jurisdiction over an action by foreign liquidators to recover redemption payments under British Virgin Island law, the fact that Defendants agreed to submit to the jurisdiction of this Court is certainly a relevant factor in determining whether the exercise of jurisdiction over Defendants is reasonable. *See Fairfield Sentry v. Theodoor GGC Amsterdam* (*In re Fairfield Sentry Ltd.*), Case No. 10-13164 (SMB), Adv. No. 10-03496 (SMB), 2018 WL 3756343, at *12 (Bankr. S.D.N.Y. Aug. 6, 2018) ("Defendants' consent to the Subscription Agreement does not constitute consent to personal jurisdiction in the U.S. Redeemer Actions."), *aff'd*, *Fairfield Sentry Ltd. v. Citibank*, No. 19-CV-3911 (VSB), 2022 WL 3644436, at *9 (S.D.N.Y. Aug. 24, 2022).

*DRAFT*

*Picard v. Maxam Absolute Return Fund, L.P. (In re BLMIS)*, 460 B.R. 106, 117 (Bankr.

S.D.N.Y. 2011), *aff'd*, 474 B.R. 76 (S.D.N.Y. 2012); *Picard v. Chais (In re BLMIS)*, 440 B.R.

274, 278 (Bankr. S.D.N.Y. 2010); *Picard v. Cohmad Sec. Corp. (In re BLMIS)*, 418 B.R. 75, 82

(Bankr. S.D.N.Y. 2009); *Picard v. Fairfield Greenwich Grp., (In re Fairfield Sentry Ltd.*), 627

B.R. 546, 568 (Bankr. S.D.N.Y. 2021); *see also In re Picard*, 917 F.3d 85, 103 (2d Cir. 2019)

("The United States has a compelling interest in allowing domestic estates to recover

fraudulently transferred property.").

By alleging that RBC Defendants intentionally invested in BLMIS, the Trustee has met

his burden of alleging jurisdiction as to each subsequent transfer that originated with BLMIS.

And by alleging that RBC Defendants used New York bank accounts, the Trustee has met his

burden of alleging jurisdiction over each transfer received through those New York bank

accounts. As recognized by the Second Circuit, "[w]hen these [subsequent transfer] investors

chose to buy into feeder funds that placed all or substantially all of their assets with Madoff

Securities, they knew where their money was going." *In re Picard*, 917 F.3d 85, 105 (2d Cir.

2019). The Trustee has made a prima facie showing of personal jurisdiction with respect to all of

the Fairfield Funds and Rye Portfolio Limited subsequent transfers at issue in this Complaint.

**12(b)(6) standard**

"To survive a motion to dismiss, the complaint must contain sufficient factual matter,

accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009) (cleaned up). The claim is facially plausible when a plaintiff pleads facts

that allow the Court to draw a "reasonable inference that the defendant is liable for the

misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,'

but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also*

*DRAFT*

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) ("Asking for plausible grounds to infer an agreement does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement.").  In deciding a motion to dismiss, the Court should assume the factual allegations are true and determine whether, when read together, they plausibly give rise to an entitlement of relief.  *Iqbal*, 556 U.S. at 679.  "And, of course, a well-pl[ed] complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely."  *Twombly*, 550 U.S. at 556.

In deciding the motion, "courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).  A complaint is "deemed to include any written instrument attached to it as an exhibit[,] . . . documents incorporated in it by reference[,]" and other documents "integral" to the complaint.  *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002) (citations omitted).  A document is "integral" to a complaint when the plaintiff has "actual notice" of the extraneous information and relied on it in framing the complaint.  *DeLuca v. AccessIT Grp., Inc.*, 695 F. Supp. 2d 54, 60 (S.D.N.Y. 2010) (citing *Chambers*, 282 F.3d at 153).

The Trustee is seeking to recover approximately $65.9 million in subsequent transfers made to Dexia Defendants and RBC Defendants by Fairfield Sentry, Fairfield Sigma, and Rye Portfolio Select.  (Am. Compl. ¶ 2, ECF No. 105).

**Adoption by Reference**

*DRAFT*

Pursuant to § 550(a) of the Bankruptcy Code, a trustee is entitled to recover avoided transfers of customer property from initial transferees as well as from "any immediate or mediate transferee of such initial transferee." 11 U.S.C. § 550(a). "To plead a subsequent transfer claim, the Trustee must plead that the initial transfer is avoidable, and the defendant is a subsequent transferee of that initial transferee, that is, that the funds at issue originated with the debtor." *Picard v. BNP Paribas S.A. (In re BLMIS),* 594 B.R. 167, 195 (Bankr. S.D.N.Y. 2018); *see also SIPC v. BLMIS (In re Consol. Proc. On 11 U.S.C. § 546(e)),* No. 12 MC 115, 2013 WL 1609154, at *7 (S.D.N.Y. Apr. 15, 2013).

Whether the Fairfield and Tremont Complaints properly plead the avoidability of the initial transfer is governed by Rule 9(b). Rule 9(b) states: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

> Where the actual fraudulent transfer claim is asserted by a bankruptcy trustee, applicable Second Circuit precedent instructs courts to adopt a more liberal view since a trustee is an outsider to the transaction who must plead fraud from second-hand knowledge. Moreover, in a case such as this one, where the Trustee's lack of personal knowledge is compounded with complicated issues and transactions that extend over lengthy periods of time, the trustee's handicap increases, and even greater latitude should be afforded.

*Picard v. Cohmad Secs. Corp., (In re BLMIS),* 454 B.R. 317, 329 (Bankr. S.D.N.Y. 2011) (cleaned up).

Adoption by reference is governed by Rule 10 of the Federal Rules of Civil Procedure. Fed. R. Civ. Pro. 10(c). Rule 10(c) states: "A statement in a pleading may be adopted by reference elsewhere in the same pleading or in any other pleading or motion."

<u>Whether the Trustee has properly adopted the Fairfield Complaint?</u>

*DRAFT*

RBC Defendants argue that wholesale incorporation of the Fairfield Complaint violates the "short and plain statement" and "simple, concise, and direct" pleading standards set forth by Fed. R. Civ. Pro 8(a). (Mem. L. 19). Specifically, the RBC Defendants express concern that the only allegations of the initial transferee's "actual knowledge" for purposes of the section 546(e) safe harbor are contained in the Fairfield Complaint. (Mem. L. 18, 21–22, ECF No. 138). RBC Defendants contend that the adoption of the Fairfield Complaint would expand the scope of this adversary proceeding to all claims against all defendants in the Fairfield Complaint. (*Id.* at 22). RBC Defendants argue that in order to contest "actual knowledge" in raising the safe harbor defense at a later stage of this litigation, RBC Defendants would be required to address claims to which they are not a party or decipher which allegations are relevant to them. (*Id.*)

The district court has already found that adoption by reference of the Fairfield Complaint is proper. *See SIPC v. BLMIS* (*In re Consolidated Proceedings on 11 U.S.C. § 550(a)*), 501 B.R. 26, 36 (S.D.N.Y. 2013) ("The Trustee's complaint against Standard Chartered Financial Services incorporates by reference the complaints against Kingate and Fairfield, including the allegations concerning the avoidability of the initial transfers, and further alleges the avoidability of these transfers outright. Thus, the avoidability of the transfers from Madoff Securities to Kingate and Fairfield is sufficiently pleaded for purposes of section 550(a).") (cleaned up). The Court will follow the district court's instruction in *SIPC v. BLMIS (In re Consolidated Proceedings on 11 U.S.C. §550(a)).*

As was explained in *In re Geiger,* 446 B.R. 670, 679 (Bankr. E.D. Pa. 2010), pleadings filed in the "same action" may be properly adopted by reference in other pleadings in that action. 446 B.R. 670, 679 (Bankr. E.D. Pa. 2010). The Fairfield Complaint was filed in the "same action" as this adversary proceeding for purposes of Rule 10(c). *Id.* Cases within this SIPA

proceeding are filed in the same "proceeding"—the SIPA proceeding. *Perez v. Terrestar Corp.* (*In re Terrestar Corp.*), No. 16 CIV. 1421 (ER), 2017 WL 1040448, at *4 (S.D.N.Y. Mar. 16, 2017) ("Adversary proceedings filed in the same bankruptcy case do not constitute different cases."); *see also Picard v. Nelson* (*In re BLMIS*), 610 B.R. 197, 237 (Bankr. S.D.N.Y. 2019) ("The prior decisions within this SIPA proceeding constitute law of the case . . . . "); *Picard v. Legacy Capital Ltd.* (*In re BLMIS*), 603 B.R. 682, 700 (Bankr. S.D.N.Y. 2019), (citing *In re Motors Liquidation Co*., 590 B.R. 39, 62 (S.D.N.Y. 2018) (law of the case doctrine applies across adversary proceedings within the same main case), *aff'd*, 943 F.3d 125 (2d Cir. 2019)); *Perez v. Terrastar Corp. (In re Terrestar Corp.)*, No. 16 Civ. 1421 (ER), 2017 WL 1040448, at *4 (S.D.N.Y. Mar. 16, 2017) ("Adversary proceedings filed in the same bankruptcy case do not constitute different cases."), *appeal dismissed*, No. 17-1117 (2d Cir. June 29, 2017); *Bourdeau Bros., Inc. v. Montagne (In re Montagne)*, No. 08-1024 (CAB), 2010 WL 271347, at *6 (Bankr. D. Vt. Jan. 22, 2010) ("[D]ifferent adversary proceedings in the same main case do not constitute different 'cases.'").

Some courts have worried that wholesale incorporation of a pleading can lead to "confusing and inconvenient" results. *Hinton v. Trans Union, LLC*, 654 F. Supp. 2d 440, 446–47 (E.D. Va. 2009) (footnote omitted), *aff'd*, 382 F. App'x 256 (4th Cir. 2010). That is not a concern in these proceedings. RBC Defendants, like many subsequent transfer defendants in this SIPA proceeding, are aware of what has been filed in the other adversary proceeding in this SIPA liquidation. They routinely follow what is happening on a proceeding-wide basis. (*See* Supp. Mem. L., ECF No. 47) (Defendants' memorandum of law arguing for dismissal on extraterritoriality grounds).

*DRAFT*

For these reasons, the RBC Defendants' concern with addressing the entire Fairfield Complaint to raise the safe harbor defense is unavailing, and the Court will allow the Trustee to adopt the Fairfield Complaint by reference.  Though "by its terms, the safe harbor is a defense to the avoidance of the initial transfer," RBC Defendants are entitled to raise the defense where the initial transferee fails to do so.  *Picard v. BNP Paribas S.A.* (*In re BLMIS*), 594 B.R. 167, 197 (Bankr. S.D.N.Y. 2018); *Picard v. Fairfield Inv. Fund* (*In re BLMIS*), No. 08-01789 (CGM), Adv. No. 09-01239 (CGM), 2021 WL 3477479, at *3 (Bankr. S.D.N.Y. Aug. 6, 2021).  In contemplation of raising the safe harbor defense as to the initial BLMIS to Fairfield Sentry transfers, RBC Defendants have no doubt familiarized themselves enough with the Fairfield Complaint to avoid confusion and inconvenience.  (Mem. L. 18, ECF No. 138).

Through the adoption of the Fairfield Complaint the Trustee has adequately pleaded, with particularity, the avoidability of the initial transfers due to Fairfield Sentry's knowledge of BLMIS's fraud.  (Fairfield Compl. ¶¶ 314–318, 09-01239, ECF No. 286); *see also SIPC v. BLMIS* (*In re Consolidated Proceedings on 11 U.S.C. § 550(a)*), 501 B.R. 26, 36 (S.D.N.Y. 2013) ("[T]he Court directs that the following adversary proceedings be returned to the Bankruptcy Court for further proceedings consistent with this Opinion and Order . . . .").

<u>Whether the Trustee has properly adopted the Tremont Complaint?</u>

The RBC Defendants argue that the Trustee improperly adopted the Tremont Complaint by reference because the adoption of an entire complaint is beyond the limits of Federal Rule of Civil Procedure 10(c) and violates the "short and plain statement" and "simple, concise, and direct" pleading standards set forth by Fed. R. Civ. Pro 8(a).  (Mem. L. 22, ECF No. 138).

*DRAFT*

Though the Trustee alleges that Tremont had actual knowledge[6] of BLMIS's fraud in the

Amended Complaint, the RBC Defendants also argue that those allegations contradict the

allegations in the Tremont Complaint and run afoul the "simple, concise, and direct" requirement

of Rule 8(a). (Mem. L. 23, ECF No. 138). The RBC Defendants insist that the Amended

Complaint contains allegations of Rye Portfolio Limited's actual knowledge of BLMIS fraud,

whereas the Tremont complaint pleads ignorance of fraud. (*Id.* 22 n. 13). The RBC Defendants

characterize the Trustee's allegations that Tremont "blindly relied on Madoff," "should have

questioned how Madoff's alleged trades could account for such a high percentage of the total

volume traded on the exchanges of a particular stock," "wrongly relied on Madoff's reputation,"

and "buried their collective heads in the proverbial sand and refused to reasonably inquire into

many red flags well known to them and many others throughout the financial and hedge fund

industries," as allegations of ignorance of fraud and decidedly not allegations of actual

knowledge of fraud. (*Id.* at 22 n.13) (quoting the Tremont Compl. ¶¶ 9, 157, 166, 85). The RBC

Defendants contend that the allegations in the Tremont Complaint are contradictory and render

the Trustee's pleading in the instant case incoherent. (Mem. L. 22).

The Court disagrees. In the Tremont Complaint, the Trustee presents allegations of

indicia of fraud that gave Tremont "actual or constructive knowledge of BLMIS's fraud" in order

to demonstrate the avoidability of the initial transfers to Tremont. (Tremont Compl. ¶ 235).

Blindly relying on Madoff (Tremont Compl. ¶ 9), choosing not to question alleged trades

---

[6] Rye Portfolio Limited is not a natural person and can act "solely through the instrumentality of their officers or other duly authorized agents." *45 John Lofts, LLC v. Meridian Capital Grp., LLC (In re 45 John Lofts, LLC)*, 599 B.R. 730, 743. Under New York law, "the acts of agents, and the knowledge they acquire while acting within the scope of their authority are presumptively imputed to their principals." *Id.* (quoting *Kirschner v. KPMG LLP*, 15 N.Y.3d 446, 465, 912 N.Y.S.2d 508, 938 N.E.2d 941 (2010)). With no officers of its own, Rye Portfolio Limited acted through the Tremont officers and, as such, the Tremont officers were agents of Rye Portfolio Limited. (Am. Compl. ¶ 70). An agent's knowledge and acts are imputed to a corporate defendant; Tremont's officer's knowledge is imputed to Rye Portfolio Limited. *45 John Lofts*, 599 B.R. at 743.

*DRAFT*

(Tremont Compl. ¶ 166), wrongly relying on Madoff's reputation (Tremont Compl. ¶ 85), and

refusing to inquire into red flags (Tremont Compl. ¶ 157) are not indicative of ignorance, and

ignorance only, as the RBC Defendants argue.  Those same allegations can be indicative of

actual knowledge as is alleged in the Amended Complaint.  (*Compare* Am. Compl. ¶ VII)

("Tremont knew that BLMIS's IA business was a fraud") (*with* Tremont Compl. ¶ 10) ("they

continued to pour investor monies into what they knew or should have known was a fraud.");

(*compare* Am. Compl. ¶ 95) (alleging that Tremont knew from their own reports and marketing

materials that the trades and performance was impossible) (*with* Tremont Compl. ¶ 164)

("alleging that, despite having access to finance tools and metrics, that "[e]ven without

employing them, common sense dictated that Madoff's steady, consistent returns over such a

long time period were simply impossible."; (*compare* Am. Compl. ¶ 96) ("Tremont knew there

was insufficient volume for dozens, if not hundreds of the trades Madoff purported to

complete.") (*with* Tremont Compl. ¶ 165) ("[a]nalyzing the Rye Funds' statements should have

caused sophisticated hedge fund managers and advisers like Tremont and Parents to question

how the Madoff customers' transactions could have exceeded the total volume listed as traded on

a particular day.").

    The Trustee's allegations do not contradict and have not changed.  Just as he did in the

Tremont Complaint, the Trustee essentially alleges that Rye Portfolio Limited knew or should

have known that BLMIS was a fraud. (Tremont Compl. ¶ 169) ("Rye Portfolio Limited received

each of the [transfers] with actual knowledge of fraud at BLMIS, or, at a minimum, while aware

of suspicious facts that would have led Rye Portfolio Limited to inquire further into BLMIS

fraud.").  In both the Amended Complaint and the Tremont Complaint, the Trustee essentially

alleges that Tremont refused to participate in practices that would conclusively reveal what it

*DRAFT*

already knew or should have known.  The allegations in the Amended Complaint are consistent

with and build upon the theory that Tremont knew of BLMIS's fraud, as set forth in the Tremont

Complaint.

Just as this Court has held dozens of times with regard to the incorporation by reference

in the Fairfield Complaint and as discussed *supra*, the Tremont Complaint was filed within this

SIPA proceeding and is thus filed in the "same action" for the purposes of Federal Rule of Civil

Procedure 10(c).  *In re Geiger,* 446 B.R. 670, 679 (Bankr. E.D. Pa. 2010); *Perez v. Terrestar*

*Corp.* (*In re Terrestar Corp.*), No. 16 CIV. 1421 (ER), 2017 WL 1040448, at *4 (S.D.N.Y. Mar.

16, 2017) ("Adversary proceedings filed in the same bankruptcy case do not constitute different

cases."); *see also Picard v. Nelson (In re BLMIS)*, 610 B.R. 197, 237 (Bankr. S.D.N.Y. 2019)

("The prior decisions within this SIPA proceeding constitute law of the case . . . . "); *Picard v.*

*Legacy Capital Ltd. (In re BLMIS),* 603 B.R. 682, 700 (Bankr. S.D.N.Y. 2019), (citing *In re*

*Motors Liquidation Co.*, 590 B.R. 39, 62 (S.D.N.Y. 2018) (law of the case doctrine applies

across adversary proceedings within the same main case), *aff'd*, 943 F.3d 125 (2d Cir. 2019));

*Perez v. Terrastar Corp. (In re Terrestar Corp.)*, No. 16 Civ. 1421 (ER), 2017 WL 1040448, at

*4 (S.D.N.Y. Mar. 16, 2017) ("Adversary proceedings filed in the same bankruptcy case do not

constitute different cases."), *appeal dismissed*, No. 17-1117 (2d Cir. June 29, 2017); *Bourdeau*

*Bros., Inc. v. Montagne (In re Montagne)*, No. 08-1024 (CAB), 2010 WL 271347, at *6 (Bankr.

D. Vt. Jan. 22, 2010) ("[D]ifferent adversary proceedings in the same main case do not constitute

different 'cases.'").

The RBC Defendants, like many subsequent transfer defendants in this SIPA proceeding,

are aware of what has been filed in the other adversary proceedings in this SIPA liquidation and

they routinely follow what is happening on a proceeding-wide basis.  (*See* Supp. Mem. L., ECF

*DRAFT*

No. 47) (RBC Defendants' memorandum of law arguing for dismissal on extraterritoriality

grounds).  The wholesale incorporation of the Tremont Complaint leading to "confusing and

inconvenient" results is not a concern in these proceedings.  *Hinton v. Trans Union, LLC*, 654 F.

Supp. 2d 440, 446–47 (E.D. Va. 2009) (footnote omitted), *aff'd*, 382 F. App'x 256 (4th Cir.

2010).

The Trustee has adequately pleaded, with particularity, the avoidability of the initial

transfer due to Tremont's knowledge of BLMIS's fraud through both the adoption of the

Tremont Complaint and the allegations contained in the Amended Complaint.  (Am. Compl. ¶

76); (Tremont Compl. ¶¶ 264–74).

Allowing the Trustee to incorporate the Fairfield and Tremont Complaints by reference

does not prejudice RBC Defendants.  If the Court were to dismiss this Amended Complaint and

permit the Trustee to further amend his Complaint to include all of the allegations that are

already contained in the Tremont Complaint, all parties would be prejudiced by delay in these

already, overly-prolonged proceedings.  *See Picard v. Fairfield Inv. Fund* (*In re BLMIS*), No. 08-

01789 (CGM), Adv. No. 09-01239 (CGM), 2021 WL 3477479, at *4 (Bankr. S.D.N.Y. Aug. 6,

2021) ("Rule 15 places no time bar on making motions to amend pleadings and permits the

amending of pleadings "when justice so requires.").

## Conclusion

For the foregoing reasons, RBC Defendants' motion to dismiss is denied.  The Trustee

shall submit a proposed order within fourteen days of the issuance of this decision, directly to

chambers (via E-Orders), upon not less than two days' notice to all parties, as required by Local

Bankruptcy Rule 9074-1(a).



**/s/ Cecelia G. Morris**

_____

**Dated: March 14, 2023**
**Poughkeepsie, New York**

**Hon. Cecelia G. Morris**
**U.S. Bankruptcy Judge**